IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

ALVIN WESLEY KING
also known as Wes King                                                        PLAINTIFF

      v.                                Civil No. 1:25-CV-01036-MEF

SHERIFF TOMMY STURGEON,
Ashley County, Arkansas; and
JAIL ADMINISTRATOR JOHNNY GUY,
Ashley County Detention Center                                            DEFENDANTS

## MEMORANDUM AND ORDER

When he was incarcerated at the Ashley County Detention Center ("ACDC"), Plaintiff,

Alvin Wesley King, initiated the above-captioned civil rights action pursuant to 42 U.S.C. § 1983

generally alleging that he was being subject to unconstitutional conditions of confinement.[1]

Plaintiff proceeds *pro se* and *in forma pauperis* ("IFP").   (ECF No. 3).   All parties have

consented to the jurisdiction of the United States Magistrate Judge to conduct all proceedings and

for the entry of final judgment in this case.   (ECF No. 18).   This matter is currently before the

Court on Defendants' Motion for Summary Judgment for Failure to Exhaust Administrative

Remedies.   (ECF No. 22).   Plaintiff has filed his response in opposition to this motion.   (ECF

No. 28).   Defendants have filed no reply, and the deadline for doing so has passed.   Accordingly,

Defendants' Motion for Summary Judgment is ripe for the Court's consideration.    Upon review,

and for the reasons described below, Defendants' Motion for Summary Judgment is **GRANTED**,

and this matter is **DISMISSED WITHOUT PREJUDICE**.

---

[1] The docket reflects that Plaintiff's current address is "Wings to Recovery," a "re-entry" facility
in El Dorado, Arkansas.   *See* (ECF No. 28).

## I.    BACKGROUND[2]

Plaintiff was a prisoner within the meaning of 28 U.S.C. § 1915A(c) when he initiated this action, and his complaint requests redress from government officials.    (ECF No. 1). Accordingly, this Court conducted an initial review of the complaint pursuant to § 1915A(a). Upon that review, the Court recommended that service of process be issued with respect to Plaintiff's conditions of confinement claims against Defendants Sheriff Tommy Sturgeon and Jail Administrator Johnny Guy, and that all other claims be dismissed without prejudice for failure to state a plausible claim for relief.    (ECF No. 8).    District Court Judge Susan O. Hickey adopted these recommendations without objection.    (ECF No. 13).

After Defendants filed their Answer to the complaint, the Court ordered them to either file a motion for summary judgment on the issue of whether Plaintiff properly exhausted his administrative remedies before initiating this action in accordance with 42 U.S.C. § 1997e(a) by August 29, 2025, or to promptly file a notice stating that they did not intend to pursue failure to exhaust as an affirmative defense at trial.    (ECF No. 16).    On August 12, 2025, Plaintiff filed a motion to amend the complaint.    (ECF No. 20).    The Court denied that motion on the grounds that Plaintiff did not specify how he intended to amend his complaint in violation of the Local Rules.    (ECF No. 21).

Defendants subsequently filed a Motion for Summary Judgment for Failure to Exhaust Administrative Remedies, including a memorandum and statement of undisputed material facts in support.    (ECF Nos. 22-24).    Defendants argue that Plaintiff did not file any grievances regarding

---

[2] This section does not endeavor to describe every docket entry, only those relevant to the Court's consideration of the Defendants' Motion for Summary Judgment.

his conditions of confinement at the ACDC prior to initiating this lawsuit and thus did not exhaust his administrative remedies in accordance with 42 U.S.C. § 1997e(a). The Court then ordered Plaintiff to submit a response and provided instructions on how to respond. (ECF No. 25). Plaintiff's initial response in opposition to Defendants' Motion for Summary Judgment detailed his problems notarizing his statement. (ECF No. 26). Construing the response as a request for an extension of time to respond, this Court extended Plaintiff's deadline to submit his response in opposition to Defendants' Motion for Summary Judgment. (ECF No. 27). Plaintiff then filed a timely response in opposition to Defendants' Motion for Summary Judgment, asserting that he intended to discuss his conditions of his confinement in deposition with Defendant Sturgeon during his confinement, but Defendant Sturgeon declined his request; he filed a grievance regarding his general dissatisfaction with the conditions of confinement at the ACDC, but did not submit a grievance about any of the specific conditions identified in his complaint; he was not aware that the grievance procedure included an appeals process; and the grievance procedure is futile anyway. (ECF No. 29). Plaintiff further challenges the basis for his arrest for possession of a firearm, contending that contrary to these charges, he did not possess a firearm. *Id.*

## II.    LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party." *Ward v. Olson*, 939 F. Supp. 2d 956, 961 (D. Minn. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). A fact is material only when its resolution would affect the outcome of a case. *Anderson*, 477 U.S. at 248.

3

Further, the moving party bears the initial burden of identifying "those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1085 (8th Cir. 2001). In response, the non-moving party "may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002). In considering a summary judgment motion, the Court views all the evidence and inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255.

## III.    FACTS

On December 18, 2024, Plaintiff was booked into the ACDC on several charges. (ECF No. 24-2). He initiated his lawsuit on April 28, 2025, approximately four months later. (ECF No. 1). Following preservice review of his complaint, the following claims regarding his conditions of confinement at the ADC during that period (from December 18, 2024, to April 28, 2025) remain pending: (1) the toilets in cells #15, #16, #17, and #18 do not flush and officials have placed plastic bags over them to suppress the smell of feces and urine; (2) the smell of human waste sometimes emanates from the shower area and cell #10 and that smell gets worse when the outside temperature rises; (3) there is warm water in the shower area and in cell #9 and cell #2; (4) some cells have cold water, some have no running water, some sinks do not drain properly, some toilets work properly and some do not, and none of the lights work properly; (5) there is black and green mold in the shower area and in the cells; (6) inmates receive hot water in plastic containers three times a week; and (7) combs, flex pens, and shaving razors are not available for purchase on the commissary and officials do not issue these items in a manner that affords all inmates an opportunity to obtain them. (ECF No. 1). Plaintiff asserts that while officials distributed razors

4

on April 20, 2025, officials have refused requests for flex pens and combs, and these items are not available for purchase.  *See id.*

ACDC records show that during this four-month period, he submitted several requests and one grievance, dated April 25, 2025.  (ECF No. 24-3).   That grievance states:

> I gave Josh two letters which he inspected in my presence and sealed and took to front to be mailed on 04/20/25.   On 04/25/25, five business days later, James tells me he put letters in the mail for me. This is unacceptable! I have outgoing legal mail with deadlines and time constraints that can't be handled with this sort of reckless careless tardiness!

(ECF No. 24-3 at 11).   Defendant Johnny Guy reviewed his grievance that same day, and responded saying, "Your mail was mailed. You do not dictate when mail is turned in or issued out."  *Id.*

The ACDC Policies and Procedures Manual ("Manual") provides that "[d]etainees . . . will be permitted to file grievances and will be assured of written responses from Detention Facility officials in a timely and orderly manner without fear of reprisal or prejudice."   (ECF No. 24-4 at 1).   According to the Manual, a summary of the detainee grievance system is included in the "Detainee Handbook," which is provided to detainees at the time of their admission to the facility. *Id.* at 2.   "Detainees who are illiterate, non-English speaking or disabled [are] afforded the opportunity to listen to taped versions of the 'Detainee Handbook.'"   *Id.*   Relevant here, the following constitutes "grievable" matters: "Detention Facility policy, procedures or conditions that affect a detainee personally . . .." *Id.*

A grievance, moreover, must include the following information:

1.) Detainee Name, housing location and current date;

2.) Whether the form is being filed as a "grievance" or an "appeal";

5

      3.) Date and time of the alleged incident or action the [sic] caused the grievance to be filed;

      4.) A specific description or summary of the incident;

      5.) Detention officer(s), detainee(s) or other person(s) involved in the incident; and,

      6.) Signature of the detainee.

*Id.* at 3-4. Detention center officers are responsible for accepting the completed grievances and placing them in the appropriate box for the Detention Facility Administrator to review. *Id.* at 4. The Detention Facility Administrator is responsible for maintaining a log of the grievances and responding to each grievance within five working dates of the date he or she receives the complaint. *Id.* at 5. If the detainee is not satisfied with the Detention Facility Administrator's response, the detainee "may file a written appeal to the Sheriff. Detainee appeals must be filed within 24 hours of the receipt of the Detention Facility Administrator's response by the detainee." *Id.* at 6. "Detainees may utilize a detainee Grievance Form for filing appeals and are responsible for completing the form in the same manner as [the original grievance form]. The only exception to this will be that detainee will indicate on the form that it is an 'Appeal.'" *Id.* "The Sheriff will be afforded ten (10) working days from the date of his/her receipt of the appeal to investigate and respond to the appeal." *Id.* "All responses made by the Sheriff in regards to an appeal will be considered final." *Id.*

      The grievance procedure outlined in Detainee Handbook is a bit different. It merely provides as follows:

          It is the policy of the Ashley County Sheriff's Office Department of Detention that any detainee may initiate grievances at any time, for mistreatment or abuse by jail personnel or other detainees without

fear of retribution.

The detainee will file his/her grievance on the kiosk provided in each housing unit.   The Supervisors on shift will answer or it will go to higher in command for review. If the detainee wishes to appeal the resolution made on their grievance, they will have 24 hours to file an appeal with the Jail Administrator.   The Jail Administrator will then review the resolution and has five (5) days to respond to the detainees appeal, your copy will be available by kiosk.   A grievance form is required to file a grievance and grievance appeals will not be mailed to the jail admin or the sheriff.

(ECF No. 24-5 at 1-2).

## IV.    ANALYSIS

When a prisoner initiates a civil action over the conditions of his confinement, 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act (PLRA) requires the prisoner to exhaust his administrative remedies before filing suit.   42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 733 (2001) (explaining that 42 U.S.C. § 1997e(a) "requires a prisoner to exhaust 'such administrative remedies as are available' before suing over prison conditions.").    This requirement is mandatory.   *See Chelette v. Harris*, 229 F.3d 684, 687 (8th Cir. 2000).

In determining whether a prisoner has first exhausted his administrative remedies, courts look to the prison's grievance procedure.   *Abdul-Muhammad v. Kempker*, 486 F.3d 444, 446 (8th Cir. 2007) (citing *Jones v. Bock*, 549 U.S. 199 (2007)).   "[T]he degree of specificity required in a prison grievance 'will vary from system to system and claim to claim, but it is the prison's *requirements*, and not that PLRA, that define the boundaries of proper exhaustion.'"   *Id.* (quoting *Jones*, 549 U.S. at 218)) (emphasis added).   Thus, to satisfy Section 1997e(a)'s exhaustion requirement, inmates must file grievances in accordance with the institution's policies and procedures.   *Washington v. Uner*, 273 F. App'x 575, 577 (8th Cir. 2008) (citing *Woodford v. Ngo*,

548 U.S. 81, 91-92 (2006)).

### A.    Plaintiff Did Not Satisfy the ACDC Grievance Procedure

The ACDC Policies and Procedures Manual and the ACDC Detainee Handbook both establish a detainee grievance procedure, but each procedure contains different requirements.   The ACDC Policies and Procedures Manual, for example, requires that the grievance contain the "[d]ate and time of the alleged incident or action the [sic] caused the grievance to be filed" and "[a] specific description or summary of the incident."   (ECF No. 24-4 at 4).   By contrast, the ACDC Detainee Handbook merely requires that the "detainee [] file his/her grievance on the kiosk provided in each housing unit" (ECF No. 24-5 at 2), there is no specific requirement about what the grievance must contain.   In this case, however, these differences are not material because the summary judgment record shows that Plaintiff did not follow *either* procedure.

It is undisputed that prior to initiating this action, Plaintiff submitted one grievance, dated April 25, 2025, concerning the delayed delivery of his outgoing mail by "Josh" and "James." (ECF No. 24-3).   But Plaintiff's conditions of confinement claims do not concern the purported delayed delivery of his mail.   Accordingly, even if this grievance satisfied the ACDC grievance procedures, it does not concern his claims before the Court and thus does not satisfy § 1997e(a)'s exhaustion requirement.

Pointing to two grievances, dated May 18, 2025, and April 30, 2025, Plaintiff argues that he satisfied the ACDC grievance procedure.   (ECF No. 29 at 3-4) (referencing Ex. A2 at 9 & 10)).[3]   The Court is not convinced.

Plaintiff's May 18, 2025, grievance provides as follows:

On 5/17/25 Stephen was in the tower and would not let me out of

---

[3] Exhibit A2 at 9 & 10 corresponds to ECF No. 24-3 at 9, and ECF No. 24-3 at 10, respectively.

> my cell.    On 5/18/25 I told him to have my cell door opened and he
> refused.    Looks as if unsatisfactory, unacceptable, unconstitutional
> confinement conditions never end around here!

(ECF No. 24-3 at 9).    In response, Defendant Guy wrote, "When did he open the cell door?"    *Id.*
It appears that there was no further communication about this grievance.

To the extent that this grievance complains about Plaintiff's conditions of confinement, it
would likely satisfy the requirements of the grievance procedure as outlined in the ACDC Detainee
Manual, which merely requires the detainee to "file his/her grievance on the kiosk provided in
each housing unit."  (ECF No. 24-5 at 2).    The ACDC Detainee Manual grievance procedure
requires nothing more.    "Under the plain language of section 1997e(a), [however], an inmate must
exhaust administrative remedies *before* filing suit in federal court." *Johnson v. Jones*, 340 F.3d
624, 627 (8th Cir. 2003).    Thus, "in considering motions to dismiss for failure to exhaust under
section 1997e(a), the district court must look to the time of filing, not the time the district court is
rendering its decision, to determine if exhaustion has occurred."    *Id*.    In this case, Plaintiff filed
his lawsuit on April 28, 2025 (ECF No. 1), *weeks* before he initiated a grievance about the
conditions of his confinement at the ACDC on May 18, 2025.    Plaintiff's May 18, 2025,
grievance, therefore, even if it satisfies the grievance procedure outlined in the ACDC Detainee
Handbook (but not the procedure provided in the ACDC Policies and Procedures Manual), does
not satisfy § 1997e(a)'s exhaustion requirement because it was not submitted until *after* he initiated
this lawsuit.

Plaintiff's April 30, 2025, grievance fails for similar reasons.    This grievance provides as
follows:

> I, Alvin Wesley King, have been trying all morning long, this
> 04/30/2025 morning, to talk to and work with detention center staff

9

> James Montano, Tiffany Stanley, and Dominique Dodson to try to get my power of attorney signed over to my mother. The power of attorney form has to be signed by both parties the same way in which it was done for Wayne Pennington and his fiancé earlier this month in the presence of Tiffany Stanley who is a Notary Public. This is a violation of my constitutional right to due process and, since it was done in the proper legal manner for Mr. Pennington and his fiancé but not for me, it's also discrimination!

(ECF No. 24-3 at 10). In response, Defendant Guy responded that same day saying he would "look into the matter." *Id.* The problem with this grievance is two-fold: First, the subject matter of the grievance concerns his access to a notary, not the conditions of his confinement, which is the basis for his lawsuit. Second, the grievance was submitted *after* he initiated his lawsuit and thus does not satisfy § 1997e(a)'s exhaustion requirement for this reason, as well. *See Johnson*, 340 .3d at 627 ("If exhaustion was not completed at the time of filing, dismissal is mandatory.").

The grievances Plaintiff identifies, therefore, also do not satisfy § 1997e(a)'s exhaustion requirement. Upon close review of the record, moreover, the Court finds no other grievance or request that satisfies this requirement. *See also Crossley v. Georgia-Pacific Corp.*, 355 F.3d 1112, 1114 (8th Cir. 2004) (citing *Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076, 1085 (8th Cir. 1999) ("A district court is not obligated to wade through and search the entire record for some specific facts which might support the nonmoving party's claim.")). Accordingly, there is no material fact dispute that Plaintiff failed to satisfy either one of ACDC's grievance procedures before initiating this action in accordance with § 1997e(a).

### B.    The ACDC Grievance Procedure was "Available"

Concluding that Plaintiff failed to satisfy the ACDC's grievance procedure(s) does not end the Court's exhaustion analysis. "Under [42 U.S.C. § 1997e(a)], the exhaustion requirement hinges on the 'availability' of administrative remedies. An inmate must exhaust available

remedies, but need not exhaust unavailable ones." *Smith v. Andrews*, 75 F.4th 805, 808-09 (8th Cir. 2023) (internal omitted) (cleaned up). "It follows that administrative remedies are 'unavailable' to an inmate under [section 1997e(a)] when (1) the inmate was unable to file a timely grievance due to physical or mental incapacity; and (2) the administrative system's rules do not accommodate the condition by allowing a late filing." *Id.* at 809 (citations omitted) (listing cases). Further, the Supreme Court has recognized "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Ross v. Blake*, 578 U.S. 632, 643 (2016). First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, an administrative procedure is unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

Plaintiff's response in opposition to Defendants' Motion for Summary Judgment appears to offer several reasons why the Court should excuse his failure to exhaust, namely: (1) Plaintiff says that Defendants Sheriff Sturgeon and Jail Administrator Guy "unlawfully denied his request for a deposition," the subject of which was going to be the conditions of confinement (ECF No. 29 at 2); (2) the Defendants were aware of the conditions of confinement because *other* inmates repeatedly complained and filed grievance about them (*id.* at 3); (3) he was not aware of any appeal process (*id.* at 4-5); and (4) the grievance procedure is futile (*id.* at 5). Plaintiff's complaint, moreover, offers a fifth potential explanation for his non-compliance, *i.e.*, the kiosk system only

11

allows inmates to submit one grievance at a time and that grievance must be addressed before the inmate may submit a second grievance.   (ECF No. 1).   For the reasons described below, however, these excuses do not render the grievance procedure unavailable within the meaning of § 1997e(a).

First, the detention center's grievance procedure defines the boundaries of proper exhaustion under § 1997e(a).  *See Abdul-Muhammad*, 486 F.3d at 446.   Here, under both the ACDC Policies and Procedures Manual and the ACDC Detainee Handbook, an inmate must file a grievance to initiate the grievance procedure.   Neither procedure contemplates initiating a grievance by deposition, nor does either procedure explicitly contemplate initiating grievances on behalf of other inmates.   Second, the opportunity to appeal is outlined in both the ACDC Policies and Procedures Manual and the ACDC Detainee Handbook.   To the extent Plaintiff contends that he was not aware of that process, he asserts no facts suggesting that—contrary to the ACDC Policies and Procedures Manual—the ACDC Detainee Handbook (at least) was not available for him to read on the kiosk system.

Third, while Plaintiff claims that the grievance procedure is futile, "[a]n administrative remedy will be deemed futile if there is doubt about whether the agency could grant effective relief."  *Jihad v. Fabian*, 680 F.Supp.2d 1021, 1040 (D. Minn. 2010) (quoting *Ace Prop. & Cas. Insur. Co. v. Federal Crop Ins.*, 440 F.3d 992, 1000 (8th Cir. 2006)).   But Plaintiff has not asserted any evidence suggesting that the ACDC could not grant him any relief from his alleged unconstitutional conditions of confinement, by, for example, adjusting the hot water, repairing the broken toilets, or remediating the alleged mold.

Finally, Defendants have introduced evidence showing that the ACDC kiosk system does *not* limit the number of grievances an inmate may file.   (ECF No. 24-1 at ¶ 21).   Plaintiff has not

controverted this evidence with any facts sufficient to raise a material fact for trial.   Accordingly, the Court considers this fact undisputed for the purposes of summary judgment.   *See* Fed. R. Civ. P. 56(e)(2).   Notably, moreover, Plaintiff's April 25, 2025, grievance was the only grievance he submitted during the relevant timeframe, and jail officials addressed that grievance on the same day it was filed.   Thus, even if, as Plaintiff suggests, the ACDC kiosk system only allows inmates to submit one grievance at a time, there is nothing in the record establishing why he did not submit a grievance at any time before or after April 25, 2025.   Plaintiff's reasons for his non-compliance with the ACDC grievance procedure are therefore not persuasive.   Accordingly, on this record no reasonable juror could conclude that the ACDC grievance procedure was "unavailable" to Plaintiff within the meaning of 42 U.S.C. § 1997e(a).

## V.   CONCLUSION

In sum, for the reasons and upon the authorities discussed above, the Defendants' Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (ECF No. 22) is **GRANTED** and this case is **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED** this 26th day of January 2026.

/s/   *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE

13